1

2

3

4

5

6

7                           UNITED STATES DISTRICT COURT

8                      FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ARTHUR GLENN JONES, SR.,                    No.  2:15-cv-0734 TLN AC P

11                 Plaintiff,

12          v.                                   FINDINGS & RECOMMENDATIONS

13   SAM WONG, et al.,

14                 Defendants.

15

16          Plaintiff is a prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. §

17   1983.  Currently before the court is plaintiff's motion for summary judgment, ECF No. 83;

18   defendants Heatley, Pace, Williams, and Wong's motion for summary judgment, ECF No. 95;

19   and defendant Cuppy's motion for summary judgment, ECF No. 94.

20      I.      Procedural History

21          Plaintiff filed his first amended complaint alleging violations of the Eighth Amendment

22   and state tort law.  ECF No. 14.  Cuppy filed a motion to dismiss plaintiff's complaint which was

23   subsequently denied.  ECF No. 43; ECF No. 62.  Defendants Heatley, Pace, Williams, and Wong

24   answered the first amended complaint.  ECF No. 23.  Defendant Cuppy then answered the first

25   amended complaint.  ECF No. 63.  Plaintiff filed a motion for summary judgment, ECF No. 83,

26   as did Cuppy, ECF No. 94, and Heatley, Pace, Williams, and Wong, ECF No. 95.  On August 15,

27   2019, defendants served plaintiff with notice of the requirements for opposing a motion pursuant

28   to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 95 at 2-4; see Klingele v.

                                               1

1    Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir.

2    1998) (en banc) (movant may provide notice).[1]

3        II.    Plaintiff's Allegations

4            A.    Plaintiff's General Allegations

5            At all times relevant to this action, plaintiff resided at Mule Creek State Prison.  ECF No.

6    14 at 4, ¶ 12.  In 2000, plaintiff alleges he injured his back while working at the prison coffee

7    facility at Mule Creek.  Id. at 4, ¶ 18.  In 2002, plaintiff was diagnosed with degenerative disc

8    disease and the bulging of L5-S1.  Id. at 4, ¶ 19.  From 2002 to present, plaintiff alleges his

9    condition has worsened and he has not received effective or proper medical treatment.  Id. at 4, ¶

10   20.  Plaintiff alleges that in December 2013 he sent a medical request complaining of his pain, but

11   nothing was done.  Id. at 5, ¶ 21.

12           B.    Allegations Against Defendant Cuppy

13   Plaintiff alleges that on January 11, 2014, he was seen at the medical facility by defendant Cuppy.

14   Id. at 5, ¶ 22.  Plaintiff alleges that defendant Cuppy stated she would refer plaintiff to a specialist

15   at U.C. Davis, but that Cuppy failed to provide plaintiff with this referral.  Id. at 5, ¶ 23.  Plaintiff

16   alleges Cuppy was deliberately indifferent and professionally negligent to plaintiff's medical

17   condition when she allegedly did not treat plaintiff's condition.  Id. at 8, ¶ 39.

18           C.    Allegations Against Defendant Heatley

19           Plaintiff alleges that in March 2014, Plaintiff was interviewed by defendant Heatley at a

20   grievance hearing.  Id. at 5, ¶ 25.  Plaintiff alleges that he showed Heatley his involuntary muscle

21   twitching and spasming, and Heatley affirmatively acknowledged that Plaintiff has muscle

22   damage.  Id.  Plaintiff states that Heatley then prescribed plaintiff both Nortriptyline, a psycho-

23   tropic medication, and Cymbalta, instead of a pain medication; this treatment was ineffective.  Id.

24   at 5-6, ¶¶ 26, 29.  Plaintiff alleges that Nortriptyline and Cymbalta, taken together, can result in

25   lethal side effects, and despite this risk, Heatley continued to prescribe them.  Id. at 6, ¶ 29.

26   _____

27   [1]  Notice was provided by defendants Heatley, Williams, Wong, and Pace, two days after
     defendant Cuppy filed her motion.  See ECF Nos. 94 & 95.  Plaintiff acknowledged receipt of this

28   notice on October 7, 2019, and stated he did not dispute the Rand warning.  ECF No. 99 at 1.

2

Plaintiff states that Heatley refused plaintiff's requests for alternative medications such as Methadone, Neurontin, or Baclofen.  Id.  Moreover, plaintiff alleges Heatley refused to renew plaintiff's accommodations for a double mattress and lower bunk, and further refused to refer plaintiff to a neurologist or surgery consultation.  Id. at 5-6, ¶¶ 27-28.  Plaintiff alleges Heatley was deliberately indifferent and professionally negligent when he failed to treat plaintiff's twitching and spasms.  Id. at 8, ¶ 41.  Moreover, plaintiff alleges Heatley was professionally negligent in prescribing plaintiff medications that did not treat plaintiff's condition.  Id.

D.       Allegations Against Defendant Williams

Plaintiff alleges that on June 2, 2014, plaintiff was seen by defendant Williams, a telemedicine doctor.  Id. at 6, ¶ 30.  Plaintiff alleges that Williams agreed to send plaintiff to pain management, order plaintiff epidural shots, and provide plaintiff with shots in his right leg for his spasms.  Id.  Plaintiff alleges that Williams submitted a false report to defendant Wong contradicting his statements and saying that there was nothing wrong with plaintiff despite his ongoing pain.  Id.  Plaintiff alleges Williams was deliberately indifferent and professionally negligent when he did not treat plaintiff's condition and wrote a false report.  Id. at 8, ¶ 40.

E.       Allegations Against Defendant Wong

Plaintiff alleges he was seen by defendant Wong on August 1, 2014, and at that appointment, Wong stated he would provide plaintiff with a back brace as well as a consultation for pain management.  Id. at 6, ¶ 30.  Plaintiff alleges Wong was deliberately indifferent and professionally negligent when he failed to treat plaintiff's condition.  Id. at 8, ¶ 38.

F.       Allegations Against Defendant Pace

Plaintiff alleges that in 2015, defendant Pace prescribed plaintiff Nortriptyline, Cymbalta, and Gabapentin.  Id. at 7, ¶ 35.  Plaintiff states that despite plaintiff exhibiting side effects such as anxiety and loss of sleep, Pace continues to prescribe these medications.  Id. at 7, ¶¶ 35-36.  Plaintiff alleges Pace was deliberately indifferent and professionally negligent when he did not treat plaintiff's twitching and spasms.  Id. at 8, ¶ 41.  Moreover, plaintiff alleges Pace was professionally negligent in prescribing plaintiff medications that did not treat plaintiff's condition.  Id.

1        III.    Legal Standards for Summary Judgment

2              Summary judgment is appropriate when the moving party "shows that there is no genuine

3    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4    Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

5    of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627

6    F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

7    moving party may accomplish this by "citing to particular parts of materials in the record,

8    including depositions, documents, electronically stored information, affidavits or declarations,

9    stipulations (including those made for purposes of the motion only), admissions, interrogatory

10   answers, or other materials" or by showing that such materials "do not establish the absence or

11   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

12   support the fact." Fed. R. Civ. P. 56(c)(1).

13             "Where the non-moving party bears the burden of proof at trial, the moving party need

14   only prove that there is an absence of evidence to support the non-moving party's case." Oracle

15   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

16   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

17   motion, against a party who fails to make a showing sufficient to establish the existence of an

18   element essential to that party's case, and on which that party will bear the burden of proof at

19   trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

20   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

21   a circumstance, summary judgment should "be granted so long as whatever is before the district

22   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

23   56(c), is satisfied." Id.

24             If the moving party meets its initial responsibility, the burden then shifts to the opposing

25   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

26   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

27   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

28   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

                                                    4

admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

IV.    Undisputed Material Facts

At all times relevant, plaintiff has been in the custody of the California Department of Corrections and Rehabilitation and housed at Mule Creek State Prison.[2]  Defendant Cuppy's

---

[2]  Plaintiff objects to the statement that "plaintiff was an inmate" and disputes this because plaintiff is still an inmate.  ECF No. 98 at 1-2.

Statement of Undisputed Facts (Defendant Cuppy SUF) (ECF No. 94-2) ¶¶ 1-2.  In 2000, plaintiff injured his back while working at the prison coffee factory.  Id. ¶ 3.  Plaintiff has been a chronic care patient since 2001, which means that plaintiff has an ongoing problem or ailment and has regularly scheduled appointments with his primary care provider generally 14 to 20 days apart. Id. ¶¶ 4-6.  Prior to any of the incidents at issue, plaintiff was evaluated and diagnosed with low back pain and degenerative disc disease.  Id. ¶ 8.

On January 11, 2014, defendant Cuppy examined plaintiff and determined that plaintiff's musculoskeletal and neurological testing were within normal limits.  Id. ¶ 18.[3]  Cuppy prescribed plaintiff with Nortriptyline and scheduled plaintiff for a chronic care patient follow-up appointment within 80-90 days.  Id. ¶¶ 19-20.

Plaintiff filed a CDCR Health Care Appeal form on February 3, 2014, requesting a determination of the source of his back pain, epidural steroid injections, an MRI scan, a neurological referral, and spinal surgery.  Defendants Wong, Williams, Heatley, and Pace's Statement of Undisputed Facts (DSUF), ECF No. 95-4 ¶ 9.

On March 3, 2014, defendant Heatley examined plaintiff, determined an MRI and surgical consultation were not medically necessary, and scheduled plaintiff for a chronic care follow-up appointment.  DSUF, ¶¶ 10, 15.[4]  Heatley further recommended plaintiff continue taking Nortriptyline and recommended Plaintiff continue with home stretching exercises.[5]  DSUF, ¶ 13, 16.  Heatley declined to renew plaintiff's requests for a lower bunk and double mattress accommodation, stating they were not within the scope of plaintiff's Appeal.  Id. ¶ 17.[6]

---

[3]  Plaintiff does not dispute the medical records and what they reflect. Instead, plaintiff purports to dispute this fact by arguing that defendant Cuppy's examination was inadequate.  Plaintiff's Objections, ECF No. 103 at 2.
[4]  Plaintiff agrees that he saw defendant Heatley on this date, but states the examination was improper. Plaintiff has not submitted any evidence that creates a genuine dispute of material fact. Moreover, Plaintiff's suggestion that Heatley falsified records is not supported with any evidence.
[5]  Plaintiff does not appear to dispute that Heatley recommended home stretching but seems to argue that Heatley took the suggestion for home exercises from a "Pain Management Committee." ECF No. 98 at 8.
[6]  Plaintiff does not dispute that defendant Heatley denied these accommodations and does not dispute that they were not within the scope of the appeal.  Plaintiff argues, in his objections, that "it is common knowledge that while an inmate is at an interview or appointment . . . the inmate

Plaintiff saw defendant Williams on May 27, 2014 via telemedicine videoconference for a consultation and evaluation of his chronic back pain.  Id. ¶ 29.  Following the appointment, Williams prepared a report outlining his findings and recommendations.[7]  Id. ¶ 31.  Williams deferred pain management to plaintiff's primary care physician.  Id. ¶ 35

Defendant Wong treated plaintiff as his primary care physician on numerous instances for a variety of conditions including his low back condition from 2013 through 2014.  Id. ¶ 50.  During the course of Wong's treatment of plaintiff, Wong recommended plaintiff continue both Nortriptyline and Cymbalta to manage his low back condition.  Id. ¶ 51.  On August 1, 2014, Wong determined plaintiff's request to see a neurosurgeon was not medically indicated but ordered plaintiff a back-brace replacement.[8]  Id. ¶¶ 53, 56.  Prior to the August 1 appointment, Wong had referred plaintiff to defendant Williams' care.  Id. ¶ 55.

Defendant Pace treated plaintiff as his primary care physician from November 2014 through mid-2016.  Id. ¶ 70.  In response to plaintiff's requests, Pace ordered that plaintiff's Nortriptyline be either weaned or discontinued between July 28, 2015 and May 12, 2016.  Id. ¶ 71.  On July 30, 2015, Pace requested a referral to an outside medicine and rehabilitation specialist to further assess plaintiff's condition, and in response, plaintiff was seen by Dr. Michael M. Salas on October 22, 2015, November 5, 2015, and January 4, 2016.  Id. ¶¶ 76-78.

On December 3, 2014, plaintiff filed a government claim with the Government Claims Program that was later rejected.[9]  Id. at 4.  At no point has any physician recommended plaintiff undergo surgery for his condition.  Id. ¶ 49.

////

---

can ask a [doctor] to renew an accommodation."  ECF No. 98 at 8.

[7]  Defendant' statement of undisputed facts states this report was "comprehensive."  Plaintiff objects to the thoroughness of the report and the consultation, but not as to whether a report was prepared or consultation occurred.  See ECF No. 98 at 13-14.

[8]  Plaintiff does not dispute that defendant Wong ordered the brace but does appear to state that he never received it.  ECF No. 98 at 18.

[9]  Plaintiff disputes this, arguing that the letter sent February 12, 2015 did not actually reject the claim, but instead said that "it was recommended by staff that the claim be rejected" and further explained that it would send a final decision after a meeting on March 19, 2015.  ECF No. 98 at 2-3.

1        V.        Motions for Summary Judgment

2                A.        Plaintiff's Arguments

3        It is well-established that the pleadings of pro se litigants are held to "less stringent

4   standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972)

5   (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that

6   govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted),

7   overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en

8   banc).  However, the unrepresented prisoners' choice to proceed without counsel "is less than

9   voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a

10   litigant," such as "limited access to legal materials" as well as "sources of proof."  Jacobsen v.

11   Filler, 790 F.2d 1362, 1364-65 & n.4 (9th Cir. 1986) (alteration in original) (citations and internal

12   quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict

13   literalness" with respect to the requirements of the summary judgment rule.  Id. at 1364 n.4

14   (citation omitted).

15        The court is mindful of the Ninth Circuit's more overarching caution in this context, as

16   noted above, that district courts are to "construe liberally motion papers and pleadings filed by

17   pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder,

18   611 F.3d 1144, 1150 (9th Cir. 2010).

19        Plaintiff moves for summary judgment on the grounds that defendants were deliberately

20   indifferent and professionally negligent to plaintiff's ongoing degenerative disc disease and

21   involuntary spasms on his leg.  ECF No. 83, at 1.

22                B.        Defendant Cuppy's Arguments

23        Defendant Cuppy, in her opposition to plaintiff's motion for summary judgment, argues

24   that she did not violate the applicable standard of care.  ECF No. 86 at 6.  Specifically, Cuppy

25   argues that in professional malpractice cases, "expert opinion testimony is required to prove or

26   disprove that the defendant performed in accordance with the prevailing standard of care."  Id.

27   (quoting Kelley v. Trunk, 66 Cal. App. 4th 519, 523 (1998)).  Cuppy asks the court to qualify

28   Chloe Powell, P.A., as an expert in this case. ECF No. 86 at 8.  She further argues that the

8

individual plaintiff set forth as his expert, James Edmond Daly, is not an expert, but even if he were, he failed to explain how Cuppy's conduct constituted a breach of the applicable standard of care. Id. at 9. Cuppy further states that even if plaintiff had argued that Cuppy breached a standard of care, and even if this were supported by an expert's opinion, plaintiff's motion should still be denied as this would only create a genuine dispute of material fact. Id. With respect to plaintiff's deliberate indifference claim, Cuppy argues this should be denied because Cuppy's care was not medically unacceptable, and Cuppy did not disregard an excessive risk to plaintiff's health or safety. Id. at 13.

In her motion for summary judgment, Cuppy argues that she saw and examined plaintiff on a limited basis, and, upon examination, Cuppy found plaintiff's neurological testing within normal limits. ECF No. 94-1 at 10. Upon examination, plaintiff requested Nortriptyline for his pain because he had done well on this medication previously, so Cuppy prescribed Nortriptyline and scheduled plaintiff with a chronic care follow up appointment for disc disease 80-90 days later. ECF No. 94-1 at 10; ECF No. 94-3 at 12. Defendant Cuppy argues that summary judgment should be granted for her because there is no genuine dispute of material fact as to whether she was medically negligent as plaintiff has failed to refute the opinion of a well-qualified expert. Id. at 17. Moreover, defendant Cuppy argues that her motion for summary judgment should be granted as to her argument that she was not deliberately indifferent to plaintiff's needs as he has been receiving appropriate medical care since injuring his back and has not been ignored. Id. at 20.

C.      Defendant Heatley, Williams, Wong and Pace's Arguments

Defendants argue that they were not deliberately indifferent to plaintiff's medical needs, are entitled to qualified immunity, and that plaintiff's claims with respect to defendant Pace are barred for failure to exhaust administrative remedies and failure to file a Government Claims Form. ECF No. 95-3.

Specifically, defendants argue that plaintiff cannot establish that defendant Heatley was deliberately indifferent to plaintiff's serious medical needs because Heatley examined plaintiff, recommended a medication within the standard of care to plaintiff, and provided plaintiff with

1  appropriate and consistence care.  Id. at 7-8.

2        Defendants argue plaintiff cannot establish defendant Williams was deliberately

3  indifferent because Williams met the applicable standard of care when he saw plaintiff for a

4  single consultation and evaluation via Telemedicine videoconferencing, observed plaintiff

5  performing several physical movements, and provided a comprehensive report determining that

6  plaintiff suffers from degenerative disc disease.  Id. at 9.  Williams stated in his report that

7  plaintiff's condition would either resolve or have no long-term harmful effects on plaintiff's

8  health, and as such, he deferred pain management to plaintiff's primary care physician.  Id.

9  Defendants argue that these actions were consistent with plaintiff's symptoms, medical condition,

10  and the standard of care under similar circumstances.  Id. at 10.

11        Defendants next argue that there is no evidence that defendant Wong was deliberately

12  indifferent to plaintiff's medical needs because during the course of Wong's treatment of

13  plaintiff, he recommended plaintiff take both Nortriptyline and Cymbalta to manage pain;

14  referred plaintiff to a specialist prior to August 2014; exercised his appropriate medical judgment

15  in declining to refer plaintiff to a neurosurgeon on August 1, 2014; and ordered plaintiff a back-

16  brace replacement.  Id. at 11.  Defendants argue that because Wong treated plaintiff consistent

17  with the standard of care, plaintiff cannot establish a deliberate indifference claim against

18  defendant Wong.  Id. at 12.

19        Defendants next argue that plaintiff's claims against defendant Pace are barred for failure

20  to file a Government Claims Form and failure to exhaust remedies.  Id. at 12.  Defendants argue

21  that because plaintiff did not list defendant Pace in his December 3, 2014 Government Claim

22  Form, and did not file any other Government Claim Form, he did not comply with the

23  Government Claim Act.  Additionally, defendants argue that plaintiff's 602 appeal was resolved

24  prior to Pace's involvement with and treatment of plaintiff.  Id. at 12-13.  As such, defendants

25  argue that with respect to Pace, plaintiff's claims should be barred for failure to exhaust his

26  administrative remedies.  Moreover, defendants cite to the five occasions Pace saw and treated

27  plaintiff, the referral defendant Pace provided for plaintiff to see an outside specialist, and Pace's

28  responsiveness to plaintiff's requests regarding medication adjustments to argue that defendant

1    Pace was not deliberately indifferent to plaintiff's medical needs.  Id. at 13-14.

2          Finally, defendants argue that defendants, as public employees, have qualified immunity

3    and are protected from suit.

4          D.      Plaintiff's Proffered Evidence

5          In support of his motion, plaintiff has submitted the declaration of James Edmond Daly,

6    who offered his assessment of plaintiff's condition.  ECF No. 83 at 20-23.  Daly, a former

7    physician and current inmate at Chino State Prison, see id. at 25, opined that defendants did not

8    follow the standard of community care because, in part, plaintiff should not have been prescribed

9    Nortriptyline, should have received epidural nerve root steroid shots, and was not provided with

10   an MRI study since 2011.  Id. at 25.

11         Defendants Wong, Williams, Heatley, and Pace object to this evidence because Daly's

12   license to practice medicine was revoked in 2006 and he has not practiced since 2004.  ECF 87-4

13   at 2.  Accordingly, defendants contend that Daly's opinion regarding the standard of care used to

14   treat plaintiff from 2013 through 2016 is not relevant or useful.  Id.  Defendants further object to

15   the evidence stating it lacks foundation, is speculative, conclusory, and/or is irrelevant.  Id.

16   VI.   Discussion

17         A.      Deliberate Indifference Claim

18         In order to state a §1983 claim for violation of the Eighth Amendment based on

19   inadequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence

20   deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

21   To prevail, plaintiff must show both that his medical needs were objectively serious, and that

22   defendant possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298-99

23   (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992).  The requisite state of mind

24   for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 5 (1992).

25         "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

26   further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v.

27   Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other

28   grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  Examples of a

1    serious medical need include "[t]he existence of an injury that a reasonable doctor or patient

2    would find important and worthy of comment or treatment; the presence of a medical condition

3    that significantly affects an individual's daily activities; or the existence of chronic and

4    substantial pain." Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir.

5    1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989)).

6         In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

7    demanding standard for "deliberate indifference."   "While poor medical treatment will at a certain

8    point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does

9    not suffice." Wood, 900 F.2d at 1334.  Even civil recklessness (failure to act in the face of an

10   unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to

11   establish an Eighth Amendment violation.  Farmer, 511 U.S. at 837 & n.5.  It is not enough that a

12   reasonable person would have known of the risk or that a defendant should have known of the

13   risk.  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  Rather, deliberate indifference is

14   established only where the defendant subjectively "knows of and disregards an excessive risk to

15   inmate health and safety." Id. (citation and internal quotation marks omitted).  Deliberate

16   indifference can be established "by showing (a) a purposeful act or failure to respond to a

17   prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner,

18   439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

19        A difference of opinion between an inmate and prison medical personnel—or between

20   medical professionals—regarding appropriate medical diagnosis and treatment are not enough to

21   establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);

22   Toguchi, 391 F.3d at 1058.  To establish a difference of opinion rises to the level of deliberate

23   indifference, plaintiff "must show that the course of treatment the doctors chose was medically

24   unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

25                        i.  Plaintiff's Claims

26        Despite plaintiff's assertion that a genuine issue of material fact exists as to whether

27   defendants were deliberately indifferent to his serious medical needs, plaintiff has identified no

28   more than a difference of medical opinion regarding his treatment, and a "difference of opinion

                                        12

1    does not amount to a deliberate inference to [plaintiff's] serious medical needs." <u>Sanchez</u>, 891

2    F.2d at 242.  Plaintiff's evidence both in support of his motion and in opposition to defendants'—

3    such as his own declaration and that of Daly—fail to create a genuine dispute of material fact as

4    to whether defendants were deliberately indifferent to plaintiff's medical need.[10]

5           The evidence presented by the parties demonstrates that plaintiff had a large team of

6    medical professionals treating him.  In both plaintiff's papers and the moving papers submitted to

7    the court by defendants, it is clear plaintiff has seen a physician's assistant, prison doctors, and

8    outside physicians.  He has received back-braces, medications, and exercises.  His primary care

9    physicians have referred him to specialists.  Nothing in the evidence indicates that defendants

10   were indifferent to plaintiff's serious medical needs.  Plaintiff's disagreement with defendants'

11   care does not rise to the level of a constitutional violation.

12          Plaintiff argues the defendants' statements of undisputed facts is inaccurate with respect to

13   the quality of the care received.  <u>See</u> ECF No. 98.  Specifically, plaintiff states that defendants

14   refused to appropriately treat plaintiff's pain, leg twitching, and muscle spasming, <u>see</u> ECF No.

15   98 at 5, 7, 9.  Plaintiff's opinion on these matters is not enough to create a genuine dispute of

16   material fact, as needed to defeat defendants' motions for summary judgment—let alone enough

17   to prove by a preponderance of undisputed evidence that defendants were deliberately indifferent

18   to his medical needs, as needed to entitle plaintiff to summary judgment.  In order to demonstrate

19   the existence of a triable issue of fact, plaintiff needs to identify evidence other than his own

20   opinion which contradicts defendants' evidence or would otherwise permit a jury to reject

21   defendants' evidence.  Because plaintiff has not done so, the court recommends plaintiff's motion

22   for summary judgment on his deliberate indifference claim should be denied.  The undersigned

23   further recommends that defendant Cuppy's motion for summary judgment, and defendants

24   Wong, Heatley, Williams, and Pace's motion for summary judgment, be granted.  There is no

25   ────────────────────

26   [10]  Accordingly, the result would be the same whether or not the Daly declaration constitutes an admissible expert opinion.  The undersigned concludes that it does not.  <u>See</u> Rule 702, Fed. Rules Evidence.  The undersigned also sustains defendants' objections to the Daly declaration as

27   irrelevant and lacking foundation.  Again, the result would be same even if the declaration were considered, as Daly merely expresses an opinion and provides no proper basis for a jury finding

28   that defendants' actions were medically unacceptable.

1  evidence from which a reasonable jury could conclude that any moving defendant violated

2  plaintiff's Eighth Amendment rights.

3      Because the court finds no violation of plaintiff's constitutional rights, it need not address

4  defendants' argument that they are entitled to qualified immunity, or defendant Pace's argument

5  that plaintiff failed to exhaust his administrative remedies and file a Government Claims Form.

6          B.      Professional Negligence

7      Subject to the conditions set forth in 28 U.S.C. § 1367(c), district courts may decline to

8  exercise supplemental jurisdiction over state law claims.  Acri v. Varian Assocs., Inc., 114 F.3d

9  999, 1000 (9th Cir. 1997) (en banc).  The court's decision whether to exercise supplemental

10 jurisdiction should be informed by "values of economy, convenience, fairness, and comity."  Id.

11 at 1001 (citations and internal quotation marks omitted).  Further, primary responsibility for

12 developing and applying state law rests with the state courts.  Therefore, when federal claims are

13 eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction.

14 Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n.7 (1988) (citation omitted); Gini v. Las

15 Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994) ("'[I]n the usual case in which

16 federal-law claims are eliminated before trial, the balance of factors . . . will point toward

17 declining to exercise jurisdiction over the remaining state law claims.'" (emphasis and alteration

18 in original) (quoting Schneider v. TRW, Inc., 938 F.2d 986, 993 (9th Cir. 1991))).  As outlined

19 above, it is recommended that defendants' motions for summary judgment be granted as to the

20 federal claim.  Plaintiff has not identified any reason why his case is not a usual case and the

21 undersigned therefore recommends that the court decline to exercise supplemental jurisdiction

22 over plaintiff's state law claims.

23     VII.      Plain Language Summary of this Order for a Pro Se Litigant

24     It is being recommended that defendants' motions for summary judgment be granted and

25 yours be denied, because you did not show that defendants were deliberately indifferent to your

26 serious medical needs.  Disagreeing with your medical care providers or believing that their care

27 is not the best care, is not enough to show a constitutional violation.  Because it is being

28 recommended that your Eighth Amendment claim be dismissed, the undersigned is also

1  recommending that the court decline to hear your state law negligence claim.

2  VIII.   <u>Conclusion</u>

3     Accordingly, IT IS HEREBY RECOMMENDED that:

4     1.  Plaintiff's motion for summary judgment (ECF No. 83) be DENIED;

5     2.  Defendant Cuppy's motion for summary judgment (ECF No. 94) be GRANTED;

6     3.  Defendants Heatley, Pace, Williams and Wong's motion for summary judgment (ECF

7  No. 95) be GRANTED;

8     4.  Judgment be entered for defendants.

9     These findings and recommendations are submitted to the United States District Judge

10  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

11  after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

14  objections shall be served and filed within fourteen days after service of the objections.  The

15  parties are advised that failure to file objections within the specified time may waive the right to

16  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

17  DATED: July 13, 2020

18

19  ALLISON CLAIRE
  UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

15